**LONE STAR GAS COMPANY,**
Appellant,

v.

**Claude L. PIPPIN, Appellee.**

**No. 20604.**

Court of Civil Appeals of Texas,
Dallas.

Aug. 21, 1981.

Rehearing Denied Sept. 11, 1981.

Ralph E. Hartman, Mary Emma Ackels, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

Cornel Walker, Banner & Walker, Greenville, for appellee.

Before GUITTARD, C. J., and AKIN and CARVER, JJ.

CARVER, Justice.

Lone Star Gas Company appeals from a judgment awarding Claude L. Pippin $13,-687.19 in damages for breach of an oral contract to employ him "for as long as his work is satisfactory." Lone Star complains that there is no evidence or insufficient evidence to support the jury's finding that Lone Star was not "honestly dissatisfied" with Pippin's work, or that the finding is against the great weight and preponderance of the evidence. We agree that there is no evidence to sustain the jury's finding. Accordingly, we reverse and render judgment for Lone Star.

In March 1953, Pippin was employed by Lone Star as a service specialist and, according to his testimony, was told by several of his superiors he would have a job "for as long as his work was satisfactory." During the ensuing twenty years in which Pippin worked for Lone Star, he suffered from various back problems which sometimes prevented him from doing certain activities required by his job, i. e., lifting heavy objects, crawling under houses, sitting or standing for long periods, et cetera. In 1975 Pippin took a six-month sick leave, after which he claimed he was totally disabled by his back trouble and submitted his own doctor's report to support his disability. Pippin was placed on disability leave by

Lone Star. Subsequently, Lone Star learned that Pippin was employed full-time by the Hunt County Sheriff's office and, therefore, requested another opinion from Pippin's physician as to Pippin's ability to return to work. The physician sent a letter to Lone Star, later admitted into evidence, in which he stated his opinion as follows:

I feel that this patient is not able at the present time to perform his duties as a service specialist representative for Lone Star Gas. He is not able to lift the weights as you state, or crawl under houses, or climb ladders, all of which you outlined in your letter.

In reliance on the doctor's opinion, Pippin's employment with Lone Star was terminated, as were his disability payments. Pippin then sued his employer claiming it breached his employment contract. At trial, several of Pippin's former supervisors testified that Pippin could not perform some of his duties, but that they had assigned him to less burdensome duties, which would not ordinarily have been given him, in order to "keep him on the payroll." They also testified that at the time they supervised Pippin they were not dissatisfied with his work. However, Pippin's supervisor at the time of his discharge stated that he was dissatisfied, but that he had taken the steps recommending his discharge only after receiving the doctor's report. Furthermore, Pippin's doctor testified at trial that if Pippin continued to work, he could cause serious injury to himself and to others. Pippin's testimony was somewhat contradictory, at times testifying he could do the work and at times testifying he could only do part of it, but couldn't do the heavy lifting and straining. In other testimony, Pippin stated, without qualification, that he could not do the work. The evidence also showed that, despite any disability, Pippin had, on past occasions, received merit increases and promotions. The jury by its verdict found that there was a contract of employment and that Lone Star was "not honestly dissatisfied" with Pippin's work.

▇▇▇ The Texas rule regarding contracts for employment "as long as the work is satisfactory" may be stated as:

Under a contract to render satisfactory services it is not required that a reasonable ground for discharge should exist on the part of the employer. It is merely necessary that he be honestly dissatisfied with the employee's work; in other words, that such dissatisfaction is real and not pretended. It is generally conceded that a contract by which one agrees to employ another as long as the services are 'satisfactory.' ... gives the employer the right to terminate the contract and discharge the employee whenever he, the employer, acting in good faith, is actually dissatisfied with the employee's work.

\* \* \* \* \* \*

However, while it is not essential to the existence of the right to discharge the employee that the employer have any real or substantial ground for dissatisfaction, yet he must act honestly and in good faith. *His dissatisfaction, to justify the discharge, must be real and not pretended; it must not be capricious or mercenary or the result of a dishonest design to be dissatisfied in any event.*

[Emphasis added].

*Hardison v. A. H. Belo Corporation*, 247 S.W.2d 167, 168 (Tex.Civ.App.—Dallas 1952, no writ). The burden of proof to show that the employer was *not* honestly dissatisfied is upon the employee. *Kree Institute of Electrolysis, Inc. v. Fageros*, 478 S.W.2d 569 (Tex.Civ.App.—Waco 1972, no writ); *Coker v. Wesco Materials Corp.*, 368 S.W.2d 883 (Tex.Civ.App.—Eastland 1963, no writ); and *Golden Rod Mills v. Green*, 230 S.W. 1089 (Tex.Civ.App.—San Antonio 1921, writ dism'd). In *Green, supra,* the court gave some indication of what constitutes honest dissatisfaction and what degree of evidence is needed in order to carry the employee's burden:

[W]henever, in the exercise of the right to discharge, the employer acts fraudulently, or so *arbitrarily* as to amount to fraud, the employee is entitled to have the good faith of such act determined . . . .

*Id.,* 230 S.W. 1091. The court in *Green* went on to note that the question for the jury to determine is whether the employer was in fact dissatisfied, "or that by virtue of a sham, caprice, or fraud he invented a reason to get rid of a competent person who was in fact performing his contract in such a way as should give satisfaction." *Id.* at 1091.

 In light of these several authorities, we return to the record for any evidence that Lone Star "invented a reason to get rid of a competent person performing his contract in a way as should give satisfaction;" or that Pippin's discharge was "capricious," or "mercenary;" or the result of a "dishonest design to be dissatisfied in any event." In our examination of the record, we must, under Lone Star's "no evidence" point, consider only the evidence, and inferences thereon, favorable to the jury's finding and disregard all contrary evidence. See *Awad Texas Enterprises, Inc. v. Homart Dev. Co.,* 589 S.W.2d 817 (Tex.Civ.App.—Dallas 1979, no writ). First, Pippin urges that the fact that Lone Star had not previously expressed any dissatisfaction with his work constitutes some evidence that Lone Star was dishonest in its dissatisfaction at the time of Pippin's discharge. Pippin concedes that Lone Star's silence alone is no evidence but urges that silence when taken in context with his merit raises and promotions under prior supervisors, is some evidence that Lone Star was actually satisfied with his work rather than dissatisfied. We cannot agree. The only issue is whether the employer's dissatisfaction was honest *at the time of discharge*; therefore, Pippin's performance at a remote time, measured by merit raises and promotions from supervisors no longer exercising any judgment of Pippin's work, is immaterial. Second, Pippin urges that his testimony that "he could do the work, even though it hurt," was some evidence that the employer's dissatisfaction was dishonest. Again, we cannot agree. The fact that Pippin's opinion of his ability to do the work differed from his employer's opinion is no evidence that his employer's evaluation was a dishonest one because under *Hardi-*

*son, supra,* a different opinion, even though mistaken in fact, is not a dishonest opinion. We conclude that neither Pippin's ability to do his work at a prior time, nor his earlier supervisor's satisfaction with his work, nor his earlier merit raises and promotions constitute any evidence that Pippin's discharge was not upon an "honest dissatisfaction" of his employer at the actual time of discharge. Therefore, we sustain Lone Star's "no evidence" point, reverse the judgment of the trial court, and render judgment for Lone Star.

 Lone Star has also urged that the jury's finding that it was not honestly dissatisfied with Pippin's work at the time of Pippin's discharge was against the great weight and preponderance of the evidence. We sustain this point also, although it would support only a remand for a new trial. We have set out the evidence favorable to the jury's finding in our discussion of Lone Star's "no evidence" point. Under this "great weight and preponderance" point we are required to weigh the evidence contrary to the verdict as well as the evidence favorable thereto. *In re: King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Ozuna v. Dyer Fruit Box Mfg. Co.,* 606 S.W.2d 334 (Tex.Civ.App.—Tyler 1980, no writ); *Harris, Upham & Co., Inc. v. Ballantyne,* 538 S.W.2d 153 (Tex.Civ.App.—Dallas 1976, no writ). The evidence contrary to the verdict includes direct testimony from Pippin's last supervisor that he was in fact dissatisfied with Pippin's work. In addition, Pippin himself testified that his back trouble had progressed to a point where he had to take a six-month sick leave, followed by a claim for disability pay which he supported by a certificate of disability procured from his own doctor. Pippin further testified that during the time he was receiving disability pay from Lone Star he took a full time "light duty" job with the Hunt County Sheriff's office. The evidence also shows that the same doctor who had earlier certified to Pippin's disability was again requested to examine Pippin and determine whether Pippin was able to perform the duties of service specialist (Pippin's job clas-

sification with Lone Star). The doctor's opinion, contained in the letter to Lone Star from which we have previously quoted, was that Pippin could not do his work without risk of further injury to himself and to others with whom he was working. We find that since Lone Star's "dissatisfaction" at the time it discharged Pippin rested upon Pippin's own successful claim for disability pay, supported by the opinion of Pippin's own doctor, Pippin can hardly be heard to say that Lone Star was dishonest, mercenary or capricious, as in *Hardison, supra*, for believing what Pippin and his doctor had represented to be true. If anyone "invented a reason to get rid of a competent person who was in fact performing (or capable of performing) in such a way as should give satisfaction," as in *Green, supra*, Pippin and his doctor were such inventors, not Lone Star. We hold that the jury's finding that Lone Star was not honestly dissatisfied with Pippin's work is against the great weight and preponderance of the evidence and this point of Lone Star is sustained.

Reversed and rendered.