**Stanley BURGESS, Appellant,**

v.

**PERMIAN COURT REPORTERS, INC., Appellee.**

No. 08-93-00068-CV.

Court of Appeals of Texas, El Paso.

Oct. 6, 1993.

Opinion on Denial of Rehearing Nov. 3, 1993.

---

**16.** Johnson does not contend that his sentence violates any portion of the Texas Constitution.

Kathleen M. McCulloch, Shafer, Davis, McCollum, Ashley O'Leary & Stoker, Odessa, for appellant.

Dick R. Holland, Boldrick, Clifton, Nelson & Holland, James P. Boldrick, Boldrick, Clifton, Nelson & Holland, Midland, for appellee.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from a temporary injunction restraining Stanley Burgess from engaging in court reporting activities within a fifty-mile radius of the Midland–Odessa area. The injunction is based upon a non-competition clause contained in an "Independent Contractor Court Reporter Contract" Burgess entered with Permian Court Reporters, Inc. Burgess appeals.

## FACTS

Stanley Burgess, a court reporter licensed in three states, moved to Odessa, Texas in March 1991. That month, he signed an agreement to provide court reporting services to Permian Court Reporters for one year. He signed a second contract for the year 1992, which expired January 3, 1993. Both parties agree that nothing within the contract required Permian to give Burgess

work, nor did anything within the contract prevent Burgess from rejecting offered work. Among other provisions,[1] the contract contained the following non-competition agreement:

> [I]n the event this contract is terminated, for any reason, [Burgess] will not engage in the practice of court reporting, as that term has been defined herein, except for appointment as an official court reporter for a court of record, for a period of two (2) years after such termination, within a radius of (50) miles of the cities of Midland and Odessa, Texas, including the City of Midland, Texas, itself, and including the City of Odessa, Texas, itself.

Burgess's work for Permian dropped off during the months of July through November 1992. In January 1993, when his second contract expired, Burgess left Permian and began soliciting business on his own, in violation of the non-competition agreement. Permian obtained a temporary restraining order on January 15, 1993 and a temporary injunction, after hearing, on January 25.

Permian's president, Jerry Lancaster, testified at the temporary injunction hearing, as did Permian's accountant, William Branson. They stated that Permian had over a million dollars invested in buildings, computers, office equipment, and other court reporting necessities, and without the security of knowing other court reporters would not branch off and compete, this investment would not be possible. Lancaster testified that without its non-competition agreements, Permian would not be able to offer such amenities as conference rooms, instant captioning, binding, tabbing, one-day turnaround, and other state-of-the-art services. The accountant testified that because Permian pays court reporters immediately, and does not wait to receive its payment from lawyers, it is able to attract and keep good court reporters. He also testified that Permian could not maintain its business at the present level

without an enforceable non-competition agreement.

## STANDARD OF REVIEW

 A trial court has great discretion in granting or denying a temporary injunction, and this Court will not disturb the trial court's ruling absent a clear abuse of discretion. *W.C. LaRock, D.C., P.C. v. Enabit,* 812 S.W.2d 670, 671 (Tex.App.—El Paso 1991, no writ). We draw all legitimate inferences from the evidence in a light most favorable to the trial court's order. A trial court abuses its discretion in this area only when the record reflects that the findings necessary to support the order are not supported by some evidence of a substantial and probative character. *Id.*

## ENFORCEABILITY OF THE NON-COMPETITION AGREEMENT

 A non-competition agreement is a restraint of trade and unenforceable on grounds of public policy unless it is reasonable. *Martin v. Credit Protection Ass'n, Inc.,* 793 S.W.2d 667, 668 (Tex.1990); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681 (Tex.1990). A non-competition agreement is enforceable only if it: (1) is ancillary to an otherwise enforceable agreement; and (2) contains reasonable limitations as to time, area, and scope of activity. TEX.BUS. & COM. CODE ANN. § 15.51 (Vernon Supp.1993); *Property Tax Associates, Inc. v. Staffeldt,* 800 S.W.2d 349, 350 (Tex.App.—El Paso 1990, writ denied).

 In his Point of Error Three, Burgess argues that the contract between Permian and himself is not an "otherwise enforceable agreement" because it creates merely an at-will relationship, severable by either party at any time and for any reason. We agree. Permian was not obliged to give Burgess jobs, and Burgess was free to decline work offered him by Permian. The parties were bound to do or refrain from certain acts only

---

1. The contract provided that: Permian would pay Burgess a certain percentage of the gross amount he billed, Burgess was an independent contractor even though he would be treated as an employee for IRS and social security purposes, Burgess would be liable for his own mistakes, lost notes, and the like, Permian would provide office supplies and equipment, and Burgess could not obligate Permian on any notes, rent or the like without prior written consent by Permian.

*if* Permian gave Burgess work and *if* Burgess accepted it.

■ At-will relationships will not support the enforcement of non-competition agreements. *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 833 (Tex.1991); *Martin*, 793 S.W.2d at 670. The Texas Supreme Court has held specifically that a covenant not to compete executed during an at-will relationship is not ancillary to an enforceable agreement and is unenforceable as a matter of law.

Permian relies upon *Zep Manufacturing Co. v. Harthcock*, 824 S.W.2d 654, 659 (Tex. App.—Dallas 1992, no writ) in arguing that an at-will relationship will support enforcement of a non-competition agreement. We believe *Zep* is distinguishable from this case. In *Zep*, the employment contract contained an agreement that Zep could terminate employee Harthcock if in Zep's president's sole discretion Harthcock's performance was unsatisfactory. *Zep*, 824 S.W.2d at 659. Such "satisfaction" clauses contain an implied condition that an employer will act only in good faith, and termination will be founded only upon *bona fide* dissatisfaction. *Lone Star Gas Co. v. Pippin*, 620 S.W.2d 922, 924 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.). *Zep* thus did not involve a true at-will contract, but rather one in which termination could result only from genuinely unsatisfactory work. It is distinguishable from the situation here, in which either party could refuse to give or accept work at any time for any reason.

Permian also argues that other clauses in the contract make it an "otherwise enforceable contract." It points to the obligation to supply Burgess with equipment, supplies, computers, and software programs, as well as the provision that it pay Burgess a percentage of his gross billings, all of which would be enforceable against Permian. This argument ignores the nature of Permian's and Burgess's underlying obligations, however. Permian was only required to pay Burgess and give him access to its facilities if it gave him jobs and if he accepted them. Although both parties did perform under the contract for two years, neither was required to do so. We find this was an at-will rela-

tionship, and that therefore the contract's non-competition clause is unenforceable as a matter of law. Point of Error Three is sustained.

### CONCLUSION

Because of our decision on Burgess's Point of Error Three, we need not reach his remaining points of error, nor Permian's cross-point challenging the trial court's reform of the non-competition clause from two years to one year. The trial court's temporary injunction of February 11, 1993 is hereby reversed and dissolved.

### *OPINION ON MOTION FOR REHEARING*

■ In a supplemental motion for rehearing, appellee Permian Court Reporters, Inc. urges us to reconsider our opinion in light of recent amendments to the Texas Business and Commercial Code. The amendments still require that a covenant not to compete be ancillary or part of an otherwise enforceable agreement; Permian argues, however, that new language in Tex.Bus. & Com.Code Ann. § 15.51(b) should alter the outcome here. That amended section reads:

> If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, *for a term or at will*, the promisee has the burden of establishing that the covenant meets the criteria specified by Section 15.50 of this code. Act of May 14, 1993, 73rd Leg., R.S. Ch. 965, § 2, 1993 Tex.Sess.Law Serv. 12 (Vernon) [to be codified at Tex.Bus. & Com.Code Ann. § 15.-51(b) ].

Permian claims this manifests a legislative recognition that at-will contracts may be otherwise enforceable agreements which will support noncompetition agreements. Permian further relies upon additional language added at Tex.Bus. & Com.Code Ann. § 15.52 which expressly "preempts any other criteria for enforceability of a covenant not to compete...." These amendments took effect September 1, 1993 and apply to all covenants entered into before, on or after the effective date of this Act unless the enforceability of

the covenant has been finally adjudicated. Thus, they apply to the case here.

Permian argues that, in light of these amendments, we erred in holding that its at-will contract with Stanley Burgess cannot support the noncompetition agreement because it met the legislatively-imposed burden of proving the contract contained valid consideration satisfying the criteria of § 15.50. We disagree.

The Texas Supreme Court recently held in *Light v. Centel Cellular Company of Texas,* 37 Tex.Sup.Ct.J. 17, 1993 WL 392211 (October 6, 1993) that the new amendments need not alter its conclusion that an at-will employment contract, similar to the one at issue here, was:

> [N]ot ancillary to an otherwise enforceable agreement and is an unreasonable restraint of trade and unenforceable on grounds of public policy. *Id.* at 18.

Following the Supreme Court's lead, we again note that the contract between Burgess and Permian was terminable at will by either party, for any reason. It was therefore not an "otherwise enforceable agreement" and cannot meet the criteria necessary to sustain a covenant not to compete. The recent legislative amendments to the relevant statutes do not change our conclusion. Appellee's motion for rehearing is overruled.