**TRAVEL MASTERS, INC., et al. Appellants,**

v.

**STAR TOURS, INC. Appellee.**

No. 05–87–00722–CV.

Court of Appeals of Texas, Dallas.

Dec. 21, 1987.

Rehearing Denied Jan. 26, 1988.

Tom S. McCorkle, McCorkle & Westerburg, Dallas, for appellants.

Thomas S. Burke, Scoggins, O'Connor & Blanscet, Dallas, for appellee.

Before DEVANY, McCLUNG and McCRAW, JJ.

McCRAW, Justice.

Travel Masters, Inc. and Donna Goldsmith appeal a judgment granting a temporary injunction enjoining them from soliciting named customers of Star Tours, Inc. We agree with the trial court and affirm the temporary injunction.

In three points of error the appellants contend the trial court erred in granting the temporary injunction because the noncompetition agreement being enforced: (1) is primarily designed to limit competition; (2) restrains Goldsmith's right to engage in a common calling; and (3) is unsupported by consideration.

Star Tours hired Goldsmith, an experienced travel agent, on December 1, 1983, as office manager for its Dallas office. Goldsmith's duties as an office manager and travel agent were to make airline, hotel, and car rental reservations, and to issue airline tickets to her clients or customers. As a condition of her employment, Goldsmith was required to sign an "Em-

ployee Non–Competition Agreement." The agreement contained the following relevant provision:

> WHEREAS, Employee, in consideration of the agreements herein contained and the compensation to be paid *her*, expressly agrees the *she* will not, *for period of twenty-four (24) months* after termination of *her* employment hereunder for any reason whatsoever, directly or indirectly as Employer, Employee, stockholder, principal agent Employee [sic] or in any other individual representative capacity whatsoever, solicit, serve or cater to or engage in, assist, be interested in or connected with any other person, firm or corporation in the same or similar business of Employer [sic] soliciting, serving or catering to any of the customers served by *her* or by any other employee of Employer during the term of *her* employment. Additionally, Employee shall not disclose to any other persons, firms or entities in the same or similar business as Employer, the names of customers of Employer nor disclose any information of any kind pertaining to the terms of any agreements between Employer and its customers....
>
> Star Tour, Inc.
> By /s/ Suchati Vilaidaraga
> Title President
> Date December 1, 1983
> Employee
> By /s/ Donna Goldsmith
> Title *Office Manager*
> Date December 1, 1983

(emphasis added). Goldsmith left the employ of Star Tours on or about May 1, 1987, and joined Travel Masters on May 4, 1987, as its president.

On or about May 14, 1987, Star Tours sent Travel Masters a letter advising it of the terms of the Agreement and requesting that Travel Masters "cease to interfere with the contractual relationship." On June 2, 1987, Star Tours filed its Original Petition and Request for Injunctive Relief seeking to enforce its non-competition agreement. After a hearing, the court entered its Limited Order for Temporary Injunction restraining appellants from soliciting a specified list of Star Tours' customers. No findings of fact or conclusions of law were requested. Goldsmith now appeals.

■ The authority governing the trial court's right to grant temporary injunctions is well established and clearly defined. *Sun Oil v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). The only question before the trial court in a temporary injunction hearing is whether the applicant is entitled to preservation of the subject matter status quo pending trial on the merits. The appellate question is whether the trial court abused its discretion in granting or denying the temporary injunction. *Iranian Muslim Organization v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex.1981).

■ An abuse of discretion exists only when the record reflects that the findings of the trial court necessary to sustain its order are not supported by some evidence of a substantial and probative character. *City of Houston v. Southwestern Bell Telephone Co.*, 263 S.W.2d 169, 171 (Tex. Civ.App.—Galveston 1953, writ ref'd). To warrant a preliminary injunction the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. *Keystone Life Insurance Co. v. Marketing Management, Inc.*, 687 S.W.2d 89, 92 (Tex.App.—Dallas 1985, no writ). In deciding whether Star Tours has made the requisite showing of a probable right and a probable injury, we must draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Currie v. International Telecharge, Inc.*, 722 S.W.2d 471, 474 (Tex.App. —Dallas 1986, no writ). Because no findings of fact and conclusions of law were filed, we must uphold the trial court's decision if it was based on any legal theory that is supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

■ Donna Goldsmith freely signed an agreement agreeing not to solicit her employer's clients. She did solicit those clients and as a result Star Tours' business decreased significantly causing it financial hardship. We hold that the trial court did

not abuse its discretion in issuing the temporary injunction and, therefore, proceed to address the appellants' points of error.

■ Appellants, in their first point of error, argue that the agreement is primarily designed to limit competition. A covenant not to compete is a restraint of trade and its terms are enforceable only if they are reasonable. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960). "A covenant is unreasonable if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or if it imposes undue hardship upon the person restricted." *Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983). Whether a covenant not to compete is reasonable is a question of law for the court.

■ Recently, in *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex.1987), the court recited a four-part test to determine the reasonableness of a covenant not to compete: (1) the promisee must have a legitimate interest in protecting business goodwill or trade secrets; (2) the limitations as to time, territory and activity in the covenant must be reasonable; (3) the covenant must not be injurious to the public; and (4) the promisee must give consideration for the covenant. *Id.*, 725 S.W.2d at 170–1.

We first examine the need to protect Star Tours as the former employer and promisee under the covenant not to compete. In the competitive travel business Star Tours obviously had interests to protect. The business goodwill created by its employees and its customer list are very important to the continued success of Star Tours' business. *Henshaw*, 656 S.W.2d at 418.

Second, the covenant must not be oppressive. The limitations as to time, territory, and activity in the covenant must be reasonable. *Frankiewicz v. National Comp Associates*, 633 S.W.2d 505, 507 (Tex.1982). Goldsmith was free to pursue being a travel agent anywhere she desired. The only limitation was to prohibit her from soliciting any of the Star Tours' clients for twenty-four months. This covenant is not unreasonable.

Third, the covenant must not be injurious to the public, because courts are reluctant to enforce covenants which prevent competition and deprive the community of needed goods. However, the enforcement of reasonable covenants not to compete can be in the best interests of the public. *See generally Matlock v. Data Processing Security, Inc.*, 618 S.W.2d 327, 329 (Tex.1981). They may increase efficiency by encouraging the employer to entrust confidential information to the employee. Also, the public has an interest in the preservation of the freedom to contract. *Id.* The public cannot be harmed by restricting the appellant from soliciting a limited number of the appellee's clients. We overrule appellant's first point of error.

■ In their second point of error, appellants argue that the agreement restrains their right to engage in a "common calling." Whether an employee is engaged in a common calling is a question of law to be decided from the facts of each individual case. *Bergman v. Norris of Houston*, 734 S.W.2d 673, 674 (Tex.1987). Several recent Texas cases have given examples of "common callings." *See Bergman*, 734 S.W.2d at 674 (barbering is a common calling); *Hill*, 725 S.W.2d at 172 (an individual skilled in auto trim repair is engaged in a common calling). However, to date the Texas Supreme Court has not provided guidance to define "common calling". *Hill*, 725 S.W.2d at 177 (Gonzales, J. dissenting).

Appellants' counsel conceded in oral argument that he was unable to locate a definition of this term in either state or federal jurisprudence. Nor does Webster's New International Dictionary or Black's Law Dictionary define the term "common calling". Therefore, we shall review the definitions of the individual words: "Common" is defined as "of a usual type or standard; quite usual and average; entirely ordinary and undistinguished." WEBSTER'S NEW INTERNATIONAL DICTIONARY 458 (3d ed. 1981). "Calling" is defined as "the activity in which one customarily engages as a vocation or profes-

sion." WEBSTER'S at 318. We cannot hold that as a matter of law an office manager is a "vocation or profession", "of the usual type", which is "entirely ordinary and undistinguished." Therefore, we overrule appellants' second point of error.

Appellants in their third point of error argue that Goldsmith received no consideration for entering into the agreement. We disagree. Acceptance of employment is valid consideration for a restrictive covenant not to compete. *Carl Coiffure, Inc. v. Mourlot*, 410 S.W.2d 209, 211 (Tex.Civ. App.—Houston 1966, writ ref'd, n.r.e.). In *Garcia v. Laredo Collections, Inc.*, 601 S.W.2d 97, 99 (Tex.Civ.App.—San Antonio 1980, no writ), the court stated: "When the execution of a covenant not to compete is contemporaneous with the acceptance of employment the latter becomes the consideration for the covenant." *Also see Currie*, 722 S.W.2d at 474. The special training or knowledge acquired by the employee through his employer is also valuable consideration and often enhances the value of the employee to other firms. *Hill*, 725 S.W.2d at 171. Goldsmith received employment in exchange for signing the agreement. The agreement was signed contemporaneously with her acceptance of employment. Finally, she was employed as the "office manager" which required additional skills and training beyond those required as a travel agent. In balancing the equities of the parties, we find that the need to protect Star Tours' interests outweigh the possibility that the covenant is oppressive to the appellants. *Unitel Corp. v. Decker*, 731 S.W.2d 636, 640 (Tex.App.—Houston [14th Dist.] 1987, no writ). We overrule appellants' final point of error and affirmed the trial court's judgment.